UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DUANE M. MILLER and LAVONNE A. MILLER,<br><br>     Plaintiffs,<br><br>     v.<br><br>CHARLES A. MYERS; DANIEL A. HALLY; MICHAEL WHORTON; WASHINGTON STATE DEPARTMENT OF FISH AND WILDLIFE; and ASOTIN COUNTY,<br><br>     Defendants. | NO. CV-10-360-EFS<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DISMISSING COMPLAINT, AND CLOSING FILE** |

Before the Court, without oral argument, are Defendants Charles Myers, Michael Whorton, and the Washington State Department of Fish and Wildlife's (collectively, "State Defendants") Motion for Summary Judgment, ECF No. 54, Defendants Daniel Hally and Asotin County's (collectively, "County Defendants") Motion for Summary Judgment, ECF No. 59, and the State Defendants' Motion to Join Asotin County's Motion to Dismiss Lavonne Miller, ECF No. 71.  After reviewing the parties' submissions, applicable authority, and the record in this matter, the Court is fully informed.  For the reasons discussed below, the Court grants Defendants' motions, dismisses Plaintiffs' Complaint, and closes the file in this matter.

ORDER ~ 1

**I.   Background**[1]

The facts giving rise to this lawsuit are largely undisputed. On the morning of October 25, 2008, the opening day of Washington's modern-firearm elk hunting season, Plaintiffs Duane and Lavonne Miller (collectively, "the Millers") were sitting in a pickup truck. With Mr. and Mrs. Miller was Don Sullivan, a friend of the couple's. The trio was parked on property owned by Mrs. Miller's family in an area known for hunting off of Cloverland Road in Asotin County, Washington. The pickup was parked so that its rear faced a tree to the east and its front faced an open area to the west.

Washington Department of Fish and Wildlife Officer Charles Myers and Asotin County Deputy Sheriff Daniel Hally were patrolling the area

---

[1] The State Defendants filed a Joint Statement of Uncontroverted Facts in relation to their motion, which the Court takes as true for purposes of drafting this background section. ECF No. 87. When considering this motion and drafting this background section, the Court: 1) took as true all undisputed facts; 2) viewed all evidence and drew all justifiable inferences therefrom in Plaintiffs' favor; 3) did not weigh the evidence or assess credibility; and 4) did not accept assertions that were flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Quotations and disputed facts are supported by citation to the record, while undisputed facts are set forth without reference to an ECF number.

ORDER ~ 2

together.  Officer Myers and Deputy Hally noticed the pickup truck in which the Millers were seated and approached in their own vehicle to conduct a field inspection.  Officer Myers stepped out of his vehicle and asked Mr. Miller "How's the hunting?  Have you seen anything yet?"  Miller Decl., ECF No. 78 Ex. A ¶ 12; Clemmons Decl., ECF No. 67-1 at 32:20-21.  Mr. Miller, whose driver's side window had been rolled down before the officers arrived, answered "We are not hunting."  Miller Decl., ECF No. 78 Ex. A ¶ 13; Clemmons Decl., ECF No. 67-1 at 32:21.  Officer Myers asked Mr. Miller what he was doing, to which Mr. Miller responded that he was investigating a group of potential trespassers he had seen on the property earlier that morning.

  Officer Myers approached the pickup truck and twice asked Mr. Miller for his name, to which Mr. Miller retorted "What is your name?"  Miller Decl., ECF No. 78 Ex. A ¶ 18.  Officer Myers responded that the badge on his chest bore his name, and moved some of his equipment aside to show Mr. Miller.  At no time did Mr. Miller comply with Officer Myers' request that he identify himself.  Clemmons Decl., ECF No. 67-1 at 33:22-23; *id*. at 34:19-23.

  Now at the window of the pickup, Officer Myers noticed that a rifle sat just to Mr. Miller's right, its muzzle pointed toward the floorboard of the truck.  A spotting scope of the kind typically used for hunting rested on the dashboard of the pickup truck, and Mr. Miller had a pair of binoculars around his neck.  Officer Myers asked Mr. Miller to open the rifle's breech so that he could see whether it was loaded, and before Mr. Miller could respond, demanded a second time to see the rifle's breech.  Mr. Miller responded either "I'm not going to until you answer

ORDER ~ 3

some questions first" or "I'm not going to - until you answer a few of my questions." *Compare* Clemmons Decl., ECF No. 67-1 at 35:8-9 *with* Miller Decl., ECF No. 78 Ex. A ¶ 22.

At this point, Officer Myers became concerned about his safety and ordered Mr. Miller to exit the vehicle. When Mr. Miller did not immediately comply, Officer Myers opened the pickup's driver-side door, grabbed Mr. Miller's left arm, and twisted it behind Mr. Miller's back in a "hammerlock" position. Officer Myers attempted to pull Mr. Miller from the vehicle, causing Mr. Miller to drop the coffee mug he held in his right hand and grab the steering wheel. Deputy Hally rushed to the pickup and succeeded in wresting the steering wheel from Mr. Miller's right hand. When Mr. Miller released the steering wheel, the force of the struggle caused him to fall to the ground face-first; Mr. Miller suffered injuries to his face, chest, and shoulder and a break to his four-tooth dental bridge. Mr. Miller's nose was "gushing" blood and left a small pool of blood on the ground. Miller Decl., ECF No. 78 Ex. A ¶ 31. While on the ground, Mr. Miller received a sharp blow to his lower back and felt his face being pushed into the gravel. *Id*. Mr. Miller did not have any physical contact with the officers before or after their struggle to extricate him from his vehicle and handcuff him. Clemmons Decl., ECF No. 67-1 at 123:2-7. The interaction between Mr. Miller and the officers lasted a total of twenty to forty seconds from when Officer Myers initially asked how the hunting was until Mr. Miller was pulled from the truck. *Id.* at 118:23-24.

The officers handcuffed Mr. Miller and placed him in the back of their truck, and after seizing Mr. Miller's rifle and recording the

ORDER ~ 4

witnesses' names and dates of birth, left the scene.  The officers met an ambulance on Cloverland Road and transferred Mr. Miller to paramedics, who transported him to Tri-State Memorial Hospital in Clarkston, Washington.  Mr. Miller was released at his own request and was picked up sometime later that day by Mr. Sullivan and two other friends.

Mr. Miller was cited for unlawful avoidance of field inspection, unlawful interference with department operations, obstructing a law enforcement officer, and resisting arrest.  These misdemeanor and gross misdemeanor charges proceeded to trial and Mr. Miller was acquitted by a jury in Asotin County District Court.

Proceeding pro se, Mr. and Mrs. Miller filed suit against Officer Myers, Deputy Hally, Washington State Department of Fish & Wildlife Captain Michael Whorley, the Department of Fish and Wildlife, and Asotin County on October 14, 2010.  ECF No. 1.  On December 8, 2010, the Millers filed an Amended Complaint.  ECF No. 8.  Construed liberally, Mr. and Mrs. Miller's Amended Complaint alleges § 1983 claims for illegal search and seizure and excessive force, in addition to state-law claims for false arrest, false imprisonment, malicious prosecution, assault and battery, and negligent training and supervision.[2]  The State Defendants

---

[2] In their Response to Defendants' Statement of Material Facts in Support for Summary Judgment, the Millers further assert that "Civil Rights at issue in this action are the Second, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." ECF No. 76 at 2.  However, the Millers have not plead claims relating to violation of their Second, Fifth, or Sixth Amendment rights, and even construed

ORDER ~ 5

and the County Defendants now each move for summary judgment on all of the Millers' claims.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate if the record establishes "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing summary judgment must point to specific facts establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant summary judgment to the moving party with regard to that claim. *Celotex Corp.*, 477 U.S. at 322.

When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. This does not mean that the court accepts as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott,* 550 U.S. at 380.

//

/

---

liberally, this bare statement does not set forth a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

ORDER ~ 6

**B. Analysis**

Both groups of Defendants have moved for summary judgment on all of the Millers' claims. Because the arguments raised by the State Defendants' Motion for Summary Judgment, ECF No. 54, and the County Defendants' Motion for Summary Judgment, ECF No. 59, overlap considerably, the Court addresses both motions simultaneously.

### i. § 1983 Search and Seizure Claim

The Millers have asserted a § 1983 claim for violation of their Fourth Amendment right to be free from unreasonable searches and siezures. To assert a cognizable claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a person acting under color of state law violated a right conferred on the plaintiff by the United States Constitution or a federal statute. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). Government officials are entitled to qualified immunity from § 1983 claims so long as the right they have violated is not "clearly established." *Camreta v. Greene*, 131 S.Ct. 2020, 2030-31 (2011).

Here, the Court need not determine whether Officer Myers and Deputy Hally are entitled to qualified immunity because on the record before it, it is clear that the Millers' Fourth Amendment rights were not violated. Under *Terry v. Ohio* and its progeny, law enforcement officers may conduct an investigatory stop of a person or vehicle if they have a "reasonable suspicion that criminal activity is afoot." *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *see also Terry v. Ohio*, 392 U.S. 1, 26-27 (1968). An officer's reasonable suspicion must be a "particularized and objective basis for suspecting legal wrongdoing," and whether reasonable suspicion

ORDER ~ 7

exists is judged under the totality of the circumstances. *Arvizu*, 534 U.S. at 273 (internal quotation omitted). In this case, the undisputed facts that Mr. Miller was parked in an area known for hunting, had a spotting scope and a pair of binoculars, and had a hunting rifle within arm's reach, coupled with his refusal to respond to Officer Myers' legitimate requests that he identify himself and open the breech of the rifle, gave Officer Myers a reasonable suspicion that he could be committing the crime of unlawful hunting of big game. *See* RCW 77.15.410(1) ("A person is guilty of unlawful hunting of big game in the second degree if the person . . . [h]unts for . . . big game and the person does not have and possess all licenses, tags, or permits required under this title."). Based on this suspicion, Officer Myers detained Mr. Miller for roughly twenty to forty seconds. During that time, Mr. Miller gave Officer Myers probable cause to believe he had committed a misdemeanor, and the investigative stop progressed to a full arrest. *See* II.B.iii., *infra.* And the officers' search of the vehicle and seizure of the gun, which occurred after Mr. Miller's arrest, are exempt from the Fourth Amendment's warrant and probable cause requirements as a "search incident to arrest." *See Arizona v. Gant*, 556 U.S. 332, 338-39 (2009). Accordingly, the Court finds that Mr. Miller's Fourth Amendment rights were not violated, and grants Defendants' motion in this regard.

### ii.   § 1983 Excessive Force Claim

The Millers have also asserted a § 1983 claim for excessive force, alleging that Officer Myers and Deputy Hally used excessive force when they knocked him headlong to the ground.

/

ORDER ~ 8

The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). "Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force," but "even where some force is justified, the amount actually used may be excessive." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (internal quotation omitted). To determine whether a specific instance of the use of force was reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Factors relevant to this inquiry include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Supreme Court has repeatedly cautioned that the reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene," and "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Ryburn v. Huff*, 565 U.S. ___, No. 11-208 (January 23, 2012) (per curiam) (quoting *Graham*, 490 U.S. at 396-97).

On the record before it, the Court finds that Officer Myers and Deputy Hally's use of force was objectively reasonable under the circumstances. The fact that Mr. Miller was actively resisting arrest by refusing to let go of his steering wheel justified the officers' use

of force, and there is no indication that the officers exceeded the scope of what was justified under the circumstances, namely, force sufficient to break Mr. Miller's grip on the wheel. Furthermore, the fact that Mr. Miller had a firearm within arm's reach and refused to display its breech to Officer Myers gave rise to the officers' reasonable concern for their own safety and injected exigency into the situation. Finally, while Mr. Miller has suffered real trauma, injury, and distress as a result of this incident, nothing in the record indicates that his injuries were caused by anything but the energy released when the three struggling men were suddenly loosed from the pickup truck. In sum, while the manner in which Mr. Miller was arrested represents a significant and indeed distressing intrusion on his personal liberties, that intrusion is outweighed by the interest of the officers in safely and expeditiously carrying out their duty. Accordingly, the Millers' excessive force claim fails as a matter of law, and the Court grants Defendants' motion in this regard.

### iii. False Arrest, False Imprisonment, and Malicious Prosecution Claims

The Millers have asserted state-law claims for false arrest, false imprisonment, and malicious prosecution. Under Washington law, probable cause for an arrest is a complete defense to all three of these causes of action. *See Hansen v. City of Snohomish*, 121 Wn.2d 552, 563 (1993) ("As with an action for malicious prosecution, probable cause is a complete defense to an action for false arrest and imprisonment." (citing *Bender v. Seattle*, 99 Wn.2d 582, 592 (1983)). Whether the Millers' false arrest, false imprisonment, and malicious prosecution claims must be

dismissed thus turns on whether Officer Myers had probable cause to arrest Mr. Miller.

Probable cause to arrest "exists where the facts and circumstances within the arresting officer's knowledge of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." *State v. Terranova*, 105 Wn.2d 632, 643 (1986) (citing *State v. Gluck*, 83 Wn.2d 424, 426-27 (1974)); *State v. Braun*, 11 Wn. App. 882, 884-85 (1974)). A "bare suspicion of criminal activity" does not give an officer probable cause to arrest. *Terranova*, 105 Wn.2d at 643.

Here, Officer Myers had probable cause to believe Mr. Miller committed a number of crimes. First, Mr. Miller refused to comply with Officer Myers' requests that he identify himself and open the breech of his rifle, which is *prima facie* evidence of the crime of unlawful avoidance of a field inspection. *See* RCW 77.15.470(1) ("A person is guilty of unlawfully avoiding . . . field inspections if the person fails to . . . [p]roduce for inspection upon request by a fish and wildlife officer . . . [h]unting or fishing equipment."). And Mr. Miller's refusal to comply with Officer Myers' repeated requests that he open the breech of his rifle provided probable cause that Mr. Miller possessed a loaded firearm in a motor vehicle, which is a crime under Washington law. RCW 77.15.460(1)(a). Accordingly, because Officer Myers had probable cause to arrest Mr. Miller, and the Millers' claims for false arrest, false imprisonment, and malicious prosecution must be dismissed.

//

/

ORDER ~ 11

### iv.  Assault and Battery Claim

Under Washington law, law enforcement officers are entitled to qualified immunity from assault and battery claims if their use of force is reasonable under the circumstances. *Brooks v. City of Seattle*, 599 F.3d 1018, 1031 (9th Cir. 2010) (citing *McKinney v. City of Tukwila*, 103 Wn. App. 391 (2000)); *see also* RCW 9A.16.020(1) (use of force not unlawful "[w]henever necessarily used by a public officer in the performance of a legal duty. . . ."). Accordingly, for the reasons expressed in II.B.iii., *supra*, the Court grants Defendants' motion with regard to the Millers' assault and battery claim.

### v.  Negligent Training and Supervision Claim[3]

The Millers have also asserted a claim for negligent training and supervision. To establish a claim for negligence, a plaintiff must show that the defendant owed a duty of care, the defendant breached that duty, injury resulted, and that the defendant's breach was the proximate cause of the injury. *Hutchins v. 1001 Fourth Ave. Ass'n*, 116 Wn.2d 217, 220 (1991). Liability for negligent supervision and training arises out of the employment relationship and is predicated on the employer's furnishing of places, things, or duties the employee uses to commit negligent or intentional wrongs. *Peck v. Siau*, 65 Wn. App. 285, 294

---

[3] While the Millers' Amended Complaint does not include an explicit claim for negligent training and supervision in its "Cause of Action" section, the Court finds that when construed liberally, the Amended Complaint's allegations in sections A.5. and A.6. set forth a claim for excessive force. *See* ECF No. 8 at 2-3.

ORDER ~ 12

(1992).  Here, the Millers have presented no evidence relating to a duty that Captain Whorton, the Department of Fish and Wildlife, or Asotin County owed to Mr. Miller, nor have the Millers presented any evidence regarding breach or proximate cause.  Accordingly, the Court dismisses the Millers' negligent supervision and training claim and grants Defendants' motion in this regard.

### C. Conclusion

For the reasons stated above, the Court finds that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law on all of the Millers' claims.  As such, the Court grants Defendants' motions for summary judgment and dismisses the Millers' Amended Complaint.

### III. The State Defendants' Counterclaim

The State Defendants asserted a claim under RCW 4.24.350, which provides a counterclaim for bringing a false, unfounded, or malicious action for malicious prosecution.  ECF No. 12 at 6.  However, the State Defendants have not pursued this counterclaim and have requested that this lawsuit be dismissed in their summary judgment materials.  Accordingly, the Court dismisses the State Defendants' counterclaim.

For the reasons discussed above, **IT IS HEREBY ORDERED**:

1. The State Defendants' Motion for Summary Judgment, **ECF No. 54**, and Motion to Join Asotin County's Motion to Dismiss Lavonne Miller, **ECF No. 71**, are **GRANTED**.

2. The County Defendants' Motion for Summary Judgment, **ECF No. 59**, is **GRANTED**.

3. This matter is **DISMISSED.**

ORDER ~ 13

4.  Judgment shall be **ENTERED with prejudice** in Defendants' favor.

5.  This file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to Plaintiffs and defense counsel.

**DATED** this ___16th___ day of March 2012.

                    s/Edward F. Shea
                    EDWARD F. SHEA
             United States District Judge

Q:\Civil\2010\360.MSJ.lc2.wpd

ORDER ~ 14